# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FARM SANCTUARY**; **ANIMAL LEGAL DEFENSE FUND**; **ANIMAL OUTLOOK**; **ANIMAL WELFARE INSTITUTE**; **COMPASSION IN WORLD FARMING**; **FARM FORWARD**; and **MERCY FOR ANIMALS, INC.**, | Civil Action No.: 6:20-cv-06081 |
| Plaintiffs, | The Honorable Frank P. Geraci, Jr. |
| v. | |
| **SONNY PERDUE**, in his official capacity as Secretary of Agriculture; and **UNITED STATES DEPARTMENT OF AGRICULTURE**; **FOOD SAFETY AND INSPECTION SERVICE**; and **PAUL KIECKER**, in his official capacity as Food Safety and Inspection Service Administrator, | **DECLARATION OF RACHEL DRESKIN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** |
| Defendants. | |

## DECLARATION OF RACHEL DRESKIN

I, Rachel Dreskin swear and affirm as follows:

1. The facts contained in this declaration are known personally to me and, if called as a witness, I could and would testify competently thereto under oath.

2. I live in Brooklyn, Kings County, New York.

3. I am submitting this declaration in support of Plaintiffs' challenge to Defendants' failure to comply with Congress's 2002 mandates regarding pigs at slaughterhouses who are unable to rise or walk, and Defendants' September 16, 2019, denial of a 2014 petition for rulemaking seeking a regulation banning the slaughter of these animals for human consumption. Pigs in this

Declaration of Rachel Dreskin                                                                                                    1
Civil Action No.: 6:20-cv-06081

condition are referred to as "nonambulatory," "nonambulatory disabled" (NAD), or "downed" pigs.

4.     I am the Executive Director of Compassion in World Farming USA ("CIWF"). I have been the Executive Director since October 2018. In this capacity, I am responsible for leading and overseeing CIWF's efforts to create a more humane and sustainable food and farming system through measurable farmed animal welfare improvements and protein diversification.

5.     Before I became the Executive Director, I served as CIWF's Head of Food Business, where I oversaw the growth and development of the organization's corporate engagement program. Overall, I have worked for CIWF for more than six-and-a-half years.

6.     Because of my position, I have a thorough understanding of CIWF's mission and how CIWF's work advances that mission. My position also requires that I understand potential threats to CIWF's mission and its mission-focused work, including government action and inaction that impairs CIWF's ability to fulfill its mission.

7.     CIWF is a national 501(c)(3) non-profit organization with a mission to end all factory-farming practices. CIWF's work encompasses animals, the environment, public health, and community and workers' justice. CIWF works to accomplish its mission through campaigns, public education, corporate engagement, and legal advocacy.

8.     A core component of CIWF's mission is to educate the public about the cruelties and public health risks that are inherent in the current industrialized animal agriculture food system. CIWF performs this education by producing written online and printed materials, including literature, blog posts, social media posts, guides, and more about the harsh reality of life for farmed animals in intensive farming systems and about other impacts of factory farming, including public health impacts. CIWF's educational materials further educate consumers on

label meanings and we advise consumers on how to purchase products that promise higher animal welfare standards.

9. An additional core component of CIWF's mission is to create a sustainable food system that is more compassionate for animals and more transparent for consumers and in which the overall production and consumption of animal products is reduced.

10. Through its Food Business Program, CIWF also works with food companies—retailers, producers, manufacturers, and food service companies—to place farm animal welfare at the forefront of their corporate social responsibility agendas. Our team of specialist staff engages with leading food companies, inspiring progress through prestigious awards and supporting products and initiatives that tangibly benefit farm animals. This work specifically includes collaborating with food companies to implement higher-welfare pork sourcing standards.

11. I am aware that in 2002 Congress amended the Humane Methods of Slaughter Act (HMSA) to require the U.S. Department of Agriculture's (USDA) to investigate and submit a report on the scope of nonambulatory livestock, the causes that render livestock nonambulatory, the humane treatment of nonambulatory livestock, and the extent to which nonambulatory livestock may present handling and disposition problems. I am aware that Congress also directed the USDA to determine, based on the findings of this report, whether regulations to provide for the humane treatment, handling, and disposition of nonambulatory livestock are needed, and, if so, to promulgate such regulations.

12. I aware that pigs comprise approximately 75% of all livestock that the USDA regulates under the HMSA. I am also aware that despite the passage of nearly two decades since Congress enacted these statutory mandates, there is no evidence that the USDA has ever complied with them. I am aware that in response to Freedom of Information Act requests for the report that

Congress directed the USDA to submit, the agency has stated that it has no such records.

13. Information like that which Congress directed the USDA to investigate and report on is the sort of information that CIWF relies on to further its mission, including in its work to educate the public, consumers, and food businesses.

14. Because the USDA has not complied with Congress's mandate that it investigate and report on the scope of nonambulatory livestock, the causes that render livestock nonambulatory, the humane treatment of nonambulatory livestock, and the extent to which nonambulatory livestock present handling and disposition problems, CIWF has had to divert resources that it would otherwise use on its mission-critical activities to seek out this information through other means.

15. Because the USDA has not complied with Congress's mandate that it determine, based on specific findings, whether regulations to provide for the humane treatment, handling, and disposition of nonambulatory livestock are necessary, and has not promulgated such regulations, CIWF has been forced to further divert resources to away from its mission-critical activities to address the issue of downed animals with the public, consumers, and food businesses.

16. In 2014, CIWF, along with a coalition of other organizations, petitioned the USDA to prohibit the slaughter of downed pigs to protect animal welfare and food safety. This petition included thousands of pages of scientific studies and other supporting exhibits detailing the dire impacts to food safety and animal welfare from allowing downed pigs to be slaughtered for human consumption.  CIWF would not have had to divert its organizational resources toward work on this petition but for the USDA's failure to comply with Congress's 2002 mandates.

17. On September 16, 2019, the USDA denied this petition for rulemaking, claiming that its existing regulations and inspection procedures are sufficient and effective to ensure the humane

handling of downed pigs and the safety of the food supply.

18.     The USDA's denial of this petition has forced CIWF to further divert resources toward work that aims to counteract the USDA's failure to protect downed pigs, including by educating the public, consumers, and food business about the human health and animal welfare implications of allowing downed pigs into the food supply, including through action alerts.

19.     The USDA's failure to comply with Congress's 2002 mandates and denial of the petition to ban the slaughter of downed pigs conflicts with, frustrates, and impairs CIWF's mission of ending all factory-farming practices. In direct contravention of CIWF's mission, allowing the slaughter of downed pigs facilitates a host of cruel and dangerous factory-farming practices, including: breeding sows over and over again until their bodies are so weak that they often arrive at the slaughterhouse unable to stand or walk; breeding pigs for rapid growth and high muscularity, making them especially prone to stress; overcrowding pigs in transport trucks; and feeding pigs the growth-promoting drug ractopamine, which makes them more susceptible to stress and disease and significantly increases the chances that they will become nonambulatory. But for the USDA's unlawful actions and inactions related to downed pigs, producers would lack a financial incentive to engage in these practices because they would be unable to profit off of these weakened animals at the slaughterhouse. CIWF has had to divert organizational resources to counteract the USDA's actions and inactions regarding downed pigs and to counteract the resulting financial incentives.

20.     The USDA's failure to comply with Congress's 2002 mandates and its denial of the petition for rulemaking also contravenes CIWF's mission by causing all manner of cruel handling methods at slaughterhouses to attempt to force downed pigs to rise and move, including kicking, electro-shocking, striking, shoving, and dragging.

21. The USDA's failure to comply with Congress's 2002 mandates and the agency's denial of the petition for rulemaking further contravenes CIWF's mission by incentivizing slaughterhouses to set downed pigs aside in pens for prolonged periods in the hopes that they may rise and be worth more money, often without veterinary care, painkillers, or food, and sometimes without water or adequate shelter or protection from the elements.

22. The USDA's own Office of Inspector General has repeatedly determined that the agency is failing to ensure that animals are being humanely handled at slaughterhouses.

23. CIWF's consumer-education work is directly impaired by the USDA's failure to comply with Congress's 2002 mandates and the agency's denial of the petition for rulemaking. Even the most humanely-raised animals end up at the slaughterhouses at which the slaughter of downed pigs is currently allowed. This frustrates CIWF's efforts to educate consumers about how to make more humane purchasing decisions, since inhumane handling at the slaughterhouse renders products from even the most well-cared for animals per se inhumane.

24. CIWF's consumer-education work is further impaired by the USDA's failure to address downed pigs because it creates a misimpression that these animals are handled in a manner that is humane and lawful. CIWF is forced to divert resources to counteract that misimpression and educate consumers and the public about the reality of how these animals are handled.

25. The USDA's challenged action and inaction also frustrates CIWF's corporate engagement work because even companies that engage in higher-welfare practices must send their animals to federally regulated slaughterhouses where downed pigs can be slaughtered and are likely to be handled inhumanely. This directly impairs CIWF's work with food companies to implement higher-welfare pork sourcing standards.

26. In addition, CIWF has had to divert resources to address the USDA's New Swine

Inspection System (NSIS) regulation's impact on downed pigs. By increasing slaughter line speeds, this rule further imperils the health and welfare of downed pigs by increasing the risk that these animals will be subjected to inhumane handling in efforts to get them to move quickly. CIWF has diverted resources to raise awareness about the impacts of this rule and to engage the public, including through action alerts. But for Defendants' failure to comply with the 2002 amendment to the HMSA and denial of Plaintiffs' petition for rulemaking, CIWF would not have to expend resources to counteract the effects of the NSIS on downed pigs.

27. But for the USDA's disregard of Congress's 2002 mandates and the agency's denial of the petition for rulemaking to ban the slaughter of downed pigs, CIWF would not have to continue to divert, at least not to this extent, resources to counteract the USDA's failures.

28. An order from the Court directing the USDA to comply with Congress's 2002 mandates as to downed pigs and requiring the agency to comply with the Administrative Procedure Act, Federal Meat Inspection Act, and HMSA in responding to the petition for rulemaking to prohibit the slaughter of downed pigs would remedy CIWF's ongoing injuries.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 1, 2020                                /s/ _____

                                                  Rachel Dreskin