UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FARM SANCTUARY**; **ANIMAL LEGAL DEFENSE FUND**; **ANIMAL OUTLOOK**; **ANIMAL WELFARE INSTITUTE**; **COMPASSION IN WORLD FARMING**; **FARM FORWARD**; and **MERCY FOR ANIMALS, INC.**, | Civil Action No.: 6:20-cv-06081 |
| Plaintiffs, | The Honorable Frank P. Geraci, Jr. |
| v. | |
| **SONNY PERDUE**, in his official capacity as Secretary of Agriculture; and **UNITED STATES DEPARTMENT OF AGRICULTURE**; **FOOD SAFETY AND INSPECTION SERVICE**; and **PAUL KIECKER**, in his official capacity as Food Safety and Inspection Service Administrator, | **DECLARATION OF ANDREW DECORIOLIS ON BEHALF OF FARM FORWARD IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** |
| Defendants. | |

**DECLARATION OF ANDREW DECORIOLIS**

I, Andrew deCoriolis swear and affirm as follows:

1. The facts contained in this declaration are known personally to me and, if called as a witness, I could and would testify competently thereto under oath.

2. I live in San Francisco, California.

3. I am submitting this declaration in support of Plaintiffs' challenge to Defendants' failure to comply with Congress's 2002 mandates regarding pigs at slaughterhouses who are unable to rise or walk, and Defendants' September 16, 2019, denial of a 2014 petition for rulemaking seeking a regulation banning the slaughter of these animals for human consumption. Pigs in this condition are

referred to as "nonambulatory," "nonambulatory disabled" (NAD), or "downed" pigs.

4. I am the Executive Director of Farm Forward and have been the Executive Director since August 2018. Before becoming Executive Director, I was the Director of Policy and held that role from 2013 to 2018. In my capacity as Executive Director, I am responsible for overseeing all of Farm Forward's work to end factory farming and improve the lives of farmed animals.

5. Because of my position, I have a thorough understanding of Farm Forward's mission and how Farm Forward's work advances that mission. My position also requires that I understand potential threats to Farm Forward's mission and its mission-focused work, including government action and inaction that impairs Farm Forward's ability to fulfill its mission.

6. Farm Forward is a 501(c)(3) non-profit membership organization with a mission of ending factory farming. To achieve that mission, Farm Forward implements innovative strategies to promote conscientious food choices, reduce farm animal suffering, and advance sustainable agriculture. Farm Forward works to eliminate the worst practices in factory farming by changing consumer decision-making; supporting interdisciplinary research and academic courses about the cultural significance of animals in agriculture; and stimulating the production of essays, books, films, and religious activities that raise awareness about the problems in animal agriculture.

7. To accomplish its mission, Farm Forward regularly publishes features and resources on its website; develops content for essays, books, and documentary films; and publishes newsletters and social media posts. Farm Forward has over 40,000 newsletter subscribers and over 30,000 social media followers.

8. Farm Forward has played an important role in growing what is now the nation's largest animal welfare certification, Global Animal Partnership (GAP). GAP now oversees the welfare standards that shape the lives of more than 290 million animals. Farm Forward has worked with

GAP both as consultants providing thousands of hours of pro bono and at-cost support, and in its capacity as a member of GAP's multi-stakeholder board to help grow the organization and to constantly press for improvements in its signature 5-Step Animal Welfare Rating Standards.

9. Farm Forward is also responsible for having launched and implemented "Leadership Circle," a new institutional purchasing program that leverages the buying power of businesses, universities, and civic and religious institutions to change the way animals are raised for food. The program increases the public's understanding of higher welfare farming, supports a network of farmers who are third-party certified, and meets the demand among American consumers for products bearing animal welfare certification labels with meaningful standards. Further, the Leadership Circle encourages institutions to adopt a "less meat, better meat" approach: sourcing higher-welfare meat, poultry, and eggs while incorporating more plant-based proteins to lower costs and improve public health, the environment, and animal welfare. Members of the Leadership Circle benefit from Farm Forward's team of food systems professionals, who help institutions evaluate their current suppliers of animal products; connect with certified higher welfare producers of meat, poultry, and eggs; and employ strategies for successfully transitioning to higher-welfare products. The Leadership Circle helps institutions align their supply chains with their institutional values by providing a comprehensive set of tools and technical assistance, free of charge.

10. I am aware that in 2002 Congress amended the Humane Methods of Slaughter Act ("HMSA") to require the U.S. Department of Agriculture's ("USDA") to investigate and submit a report on the scope of nonambulatory livestock, the causes that render livestock nonambulatory, the humane treatment of nonambulatory livestock, and the extent to which nonambulatory livestock may present handling and disposition problems. I am also aware that Congress also directed the USDA to determine, based on the findings of this report, whether regulations to provide for the

humane treatment, handling, and disposition of nonambulatory livestock are needed, and, if so, to promulgate such regulations.

11.     I am also aware that despite the passage of nearly two decades since Congress enacted these statutory mandates, there is no evidence that the USDA has ever complied with them. I am aware that in response to Freedom of Information Act requests for the report that Congress directed the USDA to submit, the agency has stated that it has no such records.

12.     I understand that pigs comprise approximately 75% of all livestock that the USDA regulates under the HMSA.

13.     In 2014, Farm Forward, along with a coalition of other organizations, petitioned the USDA to prohibit the slaughter of downed pigs to protect animal welfare and food safety. This petition included thousands of pages of scientific studies and other supporting exhibits detailing the dire impacts to food safety and animal welfare from allowing downed pigs to be slaughtered for human consumption. In 2016, Farm Forward and the coalition supplemented this petition with extensive additional information. Farm Forward devoted staff time and other resources to this effort, which it would not have had to do but for the USDA's failure to comply with Congress's 2002 mandates.

14.     On September 16, 2019, the USDA denied this petition for rulemaking, claiming that its existing regulations and inspection procedures are sufficient and effective to ensure the humane handling of downed pigs and the safety of the food supply.

15.     The USDA's failure to comply with Congress's 2002 mandates and denial of the petition to ban the slaughter of downed pigs conflicts with, frustrates, and impairs Farm Forward's mission of ending factory farming and reducing farmed animal suffering. In direct contravention of Farm Forward's mission, allowing the slaughter of downed pigs facilitates a host of cruel and dangerous

factory-farming practices that lead to suffering for farmed animals, including: breeding sows over and over again until their bodies are so weak that they often arrive at the slaughterhouse unable to stand or walk; breeding pigs for rapid growth and high muscularity, making them especially prone to stress; overcrowding pigs in transport trucks; and feeding pigs the growth-promoting drug ractopamine, which makes them more susceptible to stress and disease and significantly increases the chances that they will become nonambulatory. But for the USDA's unlawful actions and inactions related to downed pigs, producers would lack a financial incentive to engage in these practices because they would be unable to profit off of these weakened animals at the slaughterhouse. Farm Forward has had to divert organizational resources to counteract the USDA's actions and inactions regarding downed pigs and to counteract the resulting financial incentives.

16. The USDA's failure to comply with Congress's 2002 mandates and its denial of the petition for rulemaking also contravenes Farm Forward's mission by causing all manner of cruel handling methods at slaughterhouses to attempt to force downed pigs to rise and move, including kicking, electro-shocking, striking, shoving, and dragging.

17. The USDA's failure to comply with Congress's 2002 mandates and the agency's denial of the petition for rulemaking further contravenes Farm Forward's mission by incentivizing slaughterhouses to set downed pigs aside in pens for prolonged periods in the hopes that they may rise and be worth more money, often without veterinary care, painkillers, or food, and sometimes without water or adequate shelter or protection from the elements.

18. Farm Forward's consumer-education work and work to promote conscientious food choices is directly impaired by the USDA's failure to comply with Congress's 2002 mandates and the agency's denial of the petition for rulemaking. Even the most humanely raised animals end up at the slaughterhouses at which the slaughter of downed pigs is allowed as a result of the agency

Declaration of Andrew deCoriolis
Civil Action No.: 6:20-cv-06081                5

action and inaction challenged in this lawsuit. This frustrates Farm Forward's efforts to educate consumers about how to make more humane purchasing decisions, since inhumane handling at the slaughterhouse renders products from even the most well-cared for animals per se inhumane.

19. Farm Forward's consumer-education work is further impaired by the USDA's failure to address downed pigs because it creates a misimpression that these animals are handled in a manner that is humane and lawful. Farm Forward is forced to divert resources to counteract that misimpression and educate consumers about the reality of how these animals are handled.

20. The USDA's challenged action and inaction also frustrates Farm Forward's corporate engagement work, including its work with GAP and the Leadership Circle, because even companies that engage in higher-welfare practices must send their animals to federally regulated slaughterhouses where downed pigs can be slaughtered and are likely to be handled inhumanely.

21. Farm Forward is also forced to divert resources toward work that aims to counteract the USDA's failure to protect downed pigs by educating the public, consumers, and businesses about the human health and animal welfare implications of allowing downed pigs into the food supply, and urging food businesses to enact voluntary policies to curtail the slaughter of downed pigs. To counteract the USDA's disregard of the 2002 mandates and denial of the petition for rulemaking, Farm Forward also has to divert resources to consult with and advise partner organizations, companies, and members on the federal regulatory framework surrounding downed pig slaughter and its adverse impacts on animal welfare.

22. In addition, because the USDA has not complied with Congress's mandate that it investigate and report on the scope of nonambulatory livestock, the causes that render livestock nonambulatory, the humane treatment of nonambulatory livestock, and the extent to which nonambulatory livestock present handling and disposition problems, Farm Forward has to divert

resources that it would otherwise use on its mission-critical activities to seek out this information through other means for its consumer education materials, interdisciplinary research and academic work, and support of essays, books, films, and religious activities that raise awareness about the problems in animal agriculture.

23. But for the USDA's disregard of Congress's 2002 mandates and the agency's denial of the petition for rulemaking to ban the slaughter of downed pigs, Farm Forward would not have to continually divert resources to counteract the USDA's failures, and would instead spend those resources on its mission-critical activities, including advising companies on setting new and improved animal welfare standards and internal protocols, supporting interdisciplinary research and academic courses about the cultural significance of animals in agriculture, and stimulating the production of essays, books, films, and religious activities that raise awareness about the problems in animal agriculture.

24. The USDA's failure to follow its congressional mandates and the agency's denial of the petition for rulemaking to ban the slaughter of downed pigs also impair the ability of those members of Farm Forward who regularly consume pork products and are concerned about the welfare of the animals they are consuming to avoid meat sourced from nonambulatory animals who are handled inhumanely. Because of the USDA's failure to investigate, report on, and regulate the slaughter of downed pigs, Farm Forward's members have no way of ensuring they are consuming pork originating from ambulatory, humanely-handled animals. These members also face health risks as a result of the USDA's failures.

25. An order from the Court directing the USDA to comply with Congress's 2002 mandates and requiring the agency to comply with the Administrative Procedure Act, Federal Meat Inspection Act, and the HMSA in responding to the petition for rulemaking to prohibit the slaughter of downed

pigs would remedy Farm Forward's and its members' ongoing injuries.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 8, 2020         /s/ _____
                               Andrew deCoriolis